UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

CORNELIUS HOLLIS,

             Plaintiff,                      Case No. 1:14-cv-1301

v.                                            Honorable Robert J. Jonker

UNKNOWN NICHOLS et al.,

             Defendants.
_____/

## OPINION

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed on the grounds of immunity and failure to state a claim.

**Discussion**

I.  Factual allegations

Plaintiff Cornelius Hollis presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Cooper Street Correctional Facility although the events about which he complains took place while he was housed at the West Shoreline Correctional Facility (MTF).[1] Plaintiff sues the MDOC and the following MTF personnel: Correctional Officer (Unknown) Nichols; Sergeant L. Smith; Assistant Resident Unit Managers (Unknown) Gunn and Sandra Galiton; Lieutenant (Unknown) Thedorff; Assistant Resident Unit Supervisor Robert L. Darnell; Hearing Officer D.J. Pallas; Hearing Investigator James Kitchen; and Warden Mary Berghuis.

Plaintiff alleges that on June 3, 2012, he went to the visiting room to meet with a visitor. When he arrived, Defendant Nichols noticed that Plaintiff was wearing clothes that did not belong to him and therefore were contraband under MDOC Policy. Nevertheless, Defendant Nichols allowed Plaintiff to enter the visiting room. Meanwhile, Defendant Nichols confirmed that Plaintiff had borrowed another prisoner's clothes. Apparently, Plaintiff was allowed to meet with his visitor for some period of time, until Defendant Nichols told Plaintiff that he could not continue his visit in the borrowed clothes. Defendant Nichols gave Plaintiff a set of his own prison-issued clothes, which Plaintiff alleges were dirty and soiled, and told Plaintiff that he would have to wear his own clothes if he wanted to continue his visit. Plaintiff requested a shift supervisor. Lt. Robinson, who

---

[1] Plaintiff states that "[a]ll claims of constitutional right violations manifested in 'MTF' or Muskegon Correctional Facility." MDOC records reflect that MTF is the West Shoreline Correctional Facility while the Muskegon Correctional facility is identified as MCF. *See* http://www.michigan.gov/corrections/0,4551,7-119--5373--,00.html (last visited on 2/18/15). MDOC records reflect that Mary Berghuis is the warden at MTF. *See id.* Because the documents Plaintiff attaches as exhibits to his complaint originated at MTF and because Warden Berghuis is named as a defendant in this action, the Court assumes Plaintiff meant to identify the West Shoreline Correctional Facility or MTF as the correctional facility in which he was housed at the time of the alleged civil rights violations.

is not a defendant, arrived and discussed the situation with Plaintiff. Lt. Robinson allowed Plaintiff to continue his visit in the borrowed clothes.

During the same June 3rd visit and after Plaintiff's discussion with Lt. Robinson, Defendant Smith arrived on duty. Defendant Smith approached Plaintiff during his on-going visit and told Plaintiff that he would have to take off the borrowed clothes and put on his own clothes. Defendant Thedorff, who was shift supervisor at that time, confirmed that Plaintiff must remove the borrowed clothes and put on his own clothes if he wished to continue his visit. Plaintiff ultimately complied and changed into his allegedly soiled prison-issued clothes

Plaintiff appears to allege that because he was allowed to wear borrowed clothes for the first part of his June 3, 2012 visit, Defendants Smith and Thedorff should never have required him to change his clothes. Additionally, Plaintiff alleges that Defendants Smith and Thedorff behaved inappropriately and mistreated him by making him change into soiled clothes. In connection with the June 3, 2012 visit, Defendant Nichols wrote a misconduct report against Plaintiff for possession of contraband.

Plaintiff seems to have had another similar incident on June 22, 2012. However, it appears that during this incident Sergeant Edgerton, who is also not a defendant, made Plaintiff go back to the housing unit and change his clothes. Plaintiff did not receive a misconduct.

Plaintiff alleges that another prisoner heard Defendants Smith and Thedorff "conspiring to make a false story [regarding] the events that happened on 6/3/12 as to plaintiff." (Compl., docket #1, Page ID#5.) Plaintiff alleges that this conspiracy was intended to "cover-up inappropriate behavior and the mistreatment of plaintiff." (*Id.*)

Plaintiff alleges that in retaliation for his filing grievances and complaints against

Defendants Nichols and Smith, Defendant Darnell refused to continue to notarize affidavits for him. Additionally, Defendant Darnell moved Plaintiff to a different unit.

Plaintiff alleges that on August 10, 2012, Defendant Smith entered Plaintiff's his housing unit and discovered a tattoo gun under the desk attached to a bottom bunk. Defendant Smith wrote a misconduct report charging Plaintiff with possession of dangerous contraband and unauthorized occupation of a cell or room. Plaintiff alleges that Defendant Smith charged him with the misconduct in retaliation for Plaintiff's grievance and complaint writing.

An investigation was conducted and a hearing held on August 15, 2012, before Defendant Pallas. Plaintiff's statement and the statements of four other prisoners who were present during the incident were admitted into evidence. Additionally, Defendant Pallas admitted into evidence Defendant Smith's written responses to six questions that Plaintiff had submitted, photographs of the evidence and the Contraband Removal Record. Defendant Kitchen was present at the hearing. At some point the hearing was adjourned so that Defendant Pallas could speak with Defendant Smith before making his decision. Ultimately, Defendant Pallas found Plaintiff guilty of a Class I misconduct for possession of dangerous contraband and unauthorized occupation of a cell or room. (*See* Ex. G, docket #1-1, Page ID#50.) Plaintiff was sanctioned with 15 days loss of privileges. (*See id.*) Plaintiff appealed to the Gratiot County Circuit Court, which issued an opinion and order on March 17, 2014, affirming Defendant Pallas' decision.

Shortly after the tattoo gun incident, Defendant Galiton transferred Plaintiff to the Central Michigan Correctional Facility (STF). Plaintiff alleges Defendant Galiton transferred him in retaliation for his grievance and complaint writing.

As relief, Plaintiff seeks compensatory and punitive damages, as well as injunctive relief.

## II.    Immunity

Plaintiff may not maintain a § 1983 action against the MDOC.  Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993).  Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court.  *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).  In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment.  *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000).  In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages.  *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)).  Therefore, the Court dismisses the MDOC.

## III.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

    A.  Defendants Berghuis and Pallas

  Plaintiff expressly states that he sues Defendants Berghuis and Pallas "strictly" based on "supervisory liability." (Compl., docket #1, Page ID#9.) Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Berghuis and Pallas engaged in any active unconstitutional behavior.[2] Accordingly, he fails to state a claim against them.

---

[2] To the extent Plaintiff intends to allege that Defendant Pallas, in his capacity as a hearing officer, violated Plaintiff's constitutional rights, Plaintiff fails to state a claim. The Sixth Circuit has held that Michigan hearing officers are professionals in the nature of administrative law judges. *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988). As such, they are entitled to absolute judicial immunity from inmates' § 1983 suits for actions taken in their capacities as hearing officers. *Id.*; *see also Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007).

B.     Defendant Gunn

Plaintiff fails to make any factual allegations against Defendant Gunn. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries"). Because Plaintiff's claims against Defendant Gunn fall far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"), his complaint against Defendant Gunn must be dismissed.

C.     Retaliation

Plaintiff alleges that Defendants retaliated against him for writing grievances and complaints. Specifically, Plaintiff alleges that: (1) Defendant Galiton retaliated against him by

transferring him to STF; (2) Defendant Darnell retaliated against Plaintiff by refusing to notarize affidavits and by moving Plaintiff to a different unit; (3) Defendant Nichols retaliated against him by telling him to change into allegedly soiled prison-issued clothes during a visit; (4) Defendant Smith retaliated against him by writing a false misconduct report charging Plaintiff with being in possession of the tattoo gun; and (5) Defendant Kitchen retaliated against him by conducting an inadequate and intentionally one-sided investigation into the tattoo gun incident.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff fails to state a retaliation claim against Defendants Galiton, Darnell, Nichols, Smith and Kitchen. With respect to his claims against Defendants Gailton and Darnell, Plaintiff fails to show adverse action. In certain circumstances, transfer to another facility or unit can be considered adverse action for purposes of a retaliation claim. *See Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010) (holding that transfer to administrative segregation or another prison's lock-down unit or can be sufficient to constitute adverse action). The *Hill* court held that transfer to a lock-down unit at another facility is more than just a transfer, and is more akin to the transfer in *Siggers-*

*El v. Barlow*, 412 F.3d 693, 701-02 (6th Cir. 2005), in which the consequence of transfer would affect the prisoner's ability to pay his lawyer, thereby affecting his access to the courts. Here however, Plaintiff fails to allege that he suffered any adverse consequences, or that he was confined in a more restrictive environment, because of his transfer between units or facilities.

With respect to his claim against Defendant Nichols and his claim against Defendant Darnell for failing to notarize affidavits, Plaintiff fails to allege any adverse action at all. The mere fact that Defendant Nichols told Plaintiff to change into allegedly soiled clothes during a visit is not sufficiently adverse to support a retaliation claim. *See Ingraham v. Wright,* 430 U.S. 651, 674 (1977) ("There is, of course, a *de minimis* level of imposition with which the Constitution is not concerned."); *Thaddeus-X*, 175 F.3d at 397 (noting that a *"de minimis* inconvenience" does not constitute cognizable First Amendment retaliation.) Likewise, Defendant Darnell's decision not to continue notarizing affidavits for Plaintiff, without more, is simply a *de minimis* inconvenience.

With respect to Plaintiff's claim that Defendants Smith and Kitchen retaliated against him in connection with the reporting and investigation of the tattoo gun incident, he fails to state a claim. A prisoner's claim that he was falsely accused of a major misconduct is barred where there has been a finding of guilt. *See Peterson v. Johnson*, 714 F.3d 905, 917 (6th Cir. 2013) (holding that a factual finding in a major misconduct proceeding has preclusive effect and is not subject to challenge in a § 1983 action). Plaintiff was found guilty of possession of the tattoo gun, and that finding was upheld by the state court. Plaintiff cannot state a retaliation claim against Defendants Smith and Kitchen based on their actions in connection with the tattoo gun incident where, as here, he was found guilty of the very act upon which he bases his retaliation claim. *See id.*

Based on the foregoing, Plaintiff fails to state a retaliation claim against Defendants Galiton, Darnell, Nichols, Smith and Kitchen.

    D.  Eighth Amendment

Plaintiff alleges that Defendants Nichols, Smith and Thedorff violated his rights under the Eighth Amendment by telling him to, or making him, change into allegedly soiled prison-issued clothes in order to continue with a visit.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference

standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

The discomforts and inconveniences of being required to wear soiled prison-issued clothes are simply not "conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348. Moreover, Plaintiff's discomfort in having to wear allegedly soiled clothes during his visit was temporary. Allegations about temporary inconveniences, *e.g*, being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F.Supp.2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)). Because Plaintiff has failed to allege a sufficiently serious risk to his health or safety, he does not state an Eighth Amendment claim against Defendants Nichols, Smith and Thedorff.

E. Conspiracy

Plaintiff alleges that Defendant Smith conspired with Defendant Thedorff to create a false story about what transpired during the June 3, 2012, visit.

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance

of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff bases his allegations on the declaration of a fellow prisoner who allegedly overheard a conversation between Defendants Smith and Thedorff regarding their desire to make up a story to cover-up their allegedly inappropriate behavior. Whether Defendants Smith and Thedorff engaged in such a conversation or not is irrelevant, because Plaintiff cannot establish that these defendants acted together with the intention of depriving Plaintiff of a federal right. As explained above, requiring Plaintiff to wear his own prison-issued clothing, even if the clothing was soiled, did not violated Plaintiff's Eighth Amendment rights. Consequently, Plaintiff fails to state a conspiracy claim against Defendants Smith and Thedorff.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed on the grounds of immunity and failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no

good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:      March 17, 2015                    /s/ Robert J. Jonker
                                              ROBERT J. JONKER
                                              UNITED STATES DISTRICT JUDGE